UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS - EASTERN DIVISION

| | |
|---|---|
| BMO Harris Bank N.A., | ) |
|     Plaintiff, | ) ) |
| v. | ) Case No. 19-cv-3393 |
| Kirke S. Meeks, | ) ) ) |
|     Defendant. | ) ) |

**COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF**

Plaintiff BMO Harris Bank, N.A. ("BMO") brings this Complaint to redress Defendant Kirke S. Meeks's ("Meeks") blatant violation of confidentiality and restrictive covenants contained in a written Separation Agreement with BMO. Meeks also has misappropriated BMO's trade secrets in violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq*. Meeks has used BMO's confidential information and his own dishonest tactics to solicit and persuade BMO wealth management clients to transfer their accounts to a new wealth management firm he formed, in violation of express provisions of the Separation Agreement he executed and now requiring repayment of the amounts he was paid as consideration for that agreement. Meeks's misconduct also has caused significant financial losses to BMO that he must pay, and he also should be enjoined from any further wrongdoing that will deprive BMO of goodwill, customer relationships, and confidential information.

**I.    THE PARTIES**

1.    BMO is a national bank organized and existing under the laws of the United States with its headquarters and principle place of business in Chicago, Illinois. As such, BMO is a citizen of Illinois for diversity purposes.

1

2. Kirke S. Meeks is an individual and former employee of BMO who is a citizen of Arizona. Meeks resides, on information and belief, at 11095 East Acoma Drive in Scottsdale, Arizona. Meeks is a party to a Separation Agreement with BMO, a true and correct copy of which is attached under seal as Exhibit A.

3. On information and belief, Meeks currently is the sole member of Meeks Wealth Management, LLC ("Meeks Wealth Management"), an Arizona limited liability company; he also is Meeks Wealth Management's Chief Compliance Officer. Meeks Wealth Management is in the business of offering investment advisory services, including portfolio management. Meeks Wealth Management's services and business are described in its January 2019 Firm Brochure, a true and correct copy of which is attached as Exhibit B.

## II. JURISDICTION AND VENUE

4. This Court has jurisdiction over this dispute pursuant to 28 U.S.C. § 1332 because the citizenship of the plaintiff and of the defendants is diverse and the amount in controversy exceeds $75,000.

5. This Court has personal jurisdiction of Meeks and venue is proper here because Meeks and BMO expressly agreed in Paragraph 10 of the Separation Agreement that "any litigation brought pursuant hereto, or with respect to any other matter in dispute between them, shall be brought exclusively in the state or federal courts located in Cook County, Illinois, and Employee [Meeks] hereby irrevocably consents to the exercise of personal jurisdiction over Employee [Meeks] by such courts." Venue also is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims in this Complaint took place in this district.

### III. FACTUAL BACKGROUND

**A. Meeks's Employment at BMO.**

6. Meeks was hired by BMO in March 2010 as a Vice President in the position of Senior Portfolio Manager II, pursuant to a written offer letter.

7. At the time of his employment, on March 9, 2010, Meeks executed a US Conditions of Employment agreement. In that agreement, he promised that "I shall at all times – including after termination of my employment with the Company – maintain secrecy with regard to the Company's business [and] the business of its clients and I shall not disclose any confidential information relative to the business or transactions of the Company or its present, past, or prospective clients. I agree to be bound by the terms of the Company's Policy on Confidential Information, as amended from time to time."

8. Meeks also executed a Non-Solicitation and Confidentiality Agreement for the Harris Private Bank on March 9, 2010 in which he promised "to protect Harris'[s] Confidential Information and customer relationships during and after [his] employment". Confidential Information included customer identities; customers' financial information, investment objectives and net worth and other account information; BMO's service offerings and plans to attract, retain and expand customer business; and other internal, non-public information concerning BMO and its customers.

9. This agreement from the outset of Meeks's employment also contained a customer non-solicitation provision barring him for one year post-termination from soliciting or attempting to solicit any customer with whom he dealt on behalf of Harris, had responsibility for, or had access to the customer's Confidential Information.

3

10. As a Senior Portfolio Manager II, Meeks's job responsibilities included construction and management of client investment portfolios, solicitation of investment assets from new and existing customers, introduction of BMO team members and additional wealth management services to BMO clients, adherence to all required legal and compliance regulations pertaining to BMO Harris Bank N.A. and maintaining good working relationships with his clients and colleagues.

11. Throughout his employment, Meeks provided investment advisory services to BMO's high net-worth clientele in its wealth management group.

12. These individuals are a select and private group of customers. Their identity and information about their wherewithal is kept confidential by BMO and only those who require access to their information to serve these customers are given access to it. Such information, including information about the fees BMO charges these customers, the amounts they have under management, and their investment choices all are quintessentially confidential information belonging to BMO that cannot and must not be shared.

13. Meeks remained in his role as Senior Portfolio Manager II, subject to non-solicitation and confidentiality obligations continuously, until October 2018.

**B. Meeks's Termination and The Separation Agreement at Issue in This Case.**

14. In 2018, BMO's wealth management group underwent some reorganization, and decided to eliminate a number of positions.

15. Meeks's performance was, comparatively, not as strong as that of some of the other employees in wealth management, and he was selected for termination and offered a severance package in accordance with BMO's standard policies.

16. In or about September 2018, Meeks was told his employment was going to be terminated.







**C. Meeks Opens a Competing Business Within Weeks of Signing the Separation Agreement.**

40. It now is apparent that Meeks never had any intention of abiding by the terms of the Separation Agreement.

41. Within weeks of his Termination Date, on or about November 26, 2018, Meeks registered Meeks Wealth Management with the State of Arizona as an LLC.

42. Meeks is identified by the Arizona Corporation Commission as the Statutory Agent and sole Member of Meeks Wealth Management, LLC, with a known place of business as 11095 East Acoma Drive, Scottsdale, AZ 85255.

43. By January 2019, Meeks Wealth Management, LLC had filed a "Part 2A of Form ADV: Firm Brochure," which identified on its cover page the Firm Contact: Kirke Meeks, Chief Compliance Officer. (Brochure, Ex. B) The Brochure also states that the firm is "wholly owned by Kirke Meeks." (*Id.*, pg. 4)

44. The Brochure establishes that Meeks Wealth Management, LLC provides products or services competitive with those provided by BMO, offering a "wide array of investment advisory services" including "Comprehensive Portfolio Management." (*Id.*, pg. 4)

45. Ironically, the Brochure claims that it "requires all representatives to conduct business with the highest level of ethical standards. . . and [o]ur firm and representatives must conduct business in an honest, ethical, and fair manner". (*Id.*, pg. 11)

46. The Brochure discloses that Meeks Wealth Management, LLC "has an arrangement with Charles Schwab & Co., Inc. ('Schwab'), a qualified custodian from whom our firm is independently owned and operated. (*Id.*, pg. 13)

**D. Meeks's Use of Confidential Information, Disparagement of BMO, and Solicitation of BMO Clients in Violation of the Separation Agreement.**

47. On information and belief, Meeks had to delay operating Meeks Wealth Management until after the federal government shutdown ended, when he completed his registration with the Securities and Exchange Commission.

48. Thereafter, Meeks began actively soliciting BMO customers to leave BMO and move their assets under management to Meeks Wealth Management.

9

49. To date, at least 12 BMO accounts have been closed and assets were withdrawn from BMO, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

50. All of the customers associated with these accounts were BMO clients who had Meeks as their portfolio manager and in every case had been clients at BMO for many years. None of these clients were carved out in any way from Meeks's non-solicitation obligation under the Separation Agreement.

51. Each of the accounts has been transferred to Schwab, the custodian for Meeks Wealth Management's accounts.

52. Both BMO clients who have transferred their accounts and those who have decided not to despite Meeks's solicitations have reported conduct and comments from Meeks that establishes that he has used BMO's Confidential Information and trade secrets, and has solicited customers in blatant violation of the Separation Agreement.





57. Meeks has compounded the wrongs of using BMO's Confidential Information and soliciting its customers by making adverse or disparaging remarks about BMO that could impugn or injure its reputation, good will and relationships with its past, present and future customers.

**E. BMO Has Been Damaged by Meeks's Breaches of the Separation Agreement.**

58. As noted above, the loss of 12 accounts, so far, has damaged BMO to the tune of approximately ▇▇▇▇ in lost fees.

59. In addition, BMO has a right to return of all of the sums paid to Meeks under his Separation Agreement.

60. BMO also has suffered and will continue to suffer harms that are incapable of calculation, including the loss of customers and good will. Meeks must be enjoined from any further solicitation of BMO clients to avoid even more harm from his misconduct.

**Count I: Breach of Contract**

61. BMO realleges and restates paragraphs 1-60 as if fully stated here.

62. The Separation Agreement signed by Meeks is a valid and enforceable contract entered into in exchange for good and valuable consideration.

63. The restrictive covenants in the Separation Agreement are reasonably necessary to protect BMO's legitimate protectible business interests and are reasonable in scope.

64. BMO performed every material obligation it owed to Meeks under the Separation Agreement.

65. The Separation Agreement prohibits Meeks for a period of one year following his termination from soliciting BMO customers.

66. The Separation Agreement also prohibits Meeks from using or disclosing BMO's Confidential Information at any time without written authorization from BMO; none was given to him.

67. The Separation Agreement also prohibits Meeks from making adverse or disparaging remarks about BMO that could impugn or injure its reputation, good will and relationships with its past, present and future customers.

68. Meeks has breached the Separation Agreement by soliciting BMO customers and using BMO Confidential Information to do so.

69. Meeks also has disparaged BMO in the course of soliciting its customers, another breach of the Separation Agreement.

70. BMO has suffered damages well in excess of $75,000 as a result of Meeks's breaches.

71. In addition, unless Meeks is enjoined from further violating the terms of his Separation Agreement, BMO will suffer irreparable loss and incalculable harm, including the loss of goodwill, customer relationships, the stability of its workforce, and proprietary and confidential information.

72. BMO lacks an adequate remedy at law and is entitled to injunctive relief.

**WHEREFORE**, BMO asks that this Court enter a judgment in its favor and against Meeks:

(a) Awarding BMO the money paid to Meeks under the Separation Agreement;

(b) Awarding actual damages arising from the wrongful solicitation of clients in an amount to be determined at trial;

(c) Entering an injunction enforcing the terms of the Separation Agreement, including the non-solicitation, confidentiality, and non-disparagement provisions;

(d) Awarding BMO its attorney's fees incurred in enforcing the terms of Paragraphs 7 and 8 of the Separation Agreement; and

(e) Granting BMO such other and further relief as the Court deems proper and just under the circumstances.

### Count II: Misappropriation of Trade Secrets in Violation of the Defend Trade Secrets Act (DTSA) 18 U.S.C. § 1836 *et seq.*

73. BMO realleges and restates paragraphs 1-60 as if fully stated here.

74. BMO was at all relevant times the owner of trade secrets involving the identity, contact and business information, and financial management terms for its customers who Meeks agreed not to solicit for a year after his termination.

75. These trade secrets were used by BMO in order to offer wealth management and other banking services for these customers and were (and are) related to services used in interstate commerce.

76. The identities, contact and business information, and financial management terms for these customers is not generally known to others in the wealth management industry and certainly would not have been known to Meeks Wealth Management absent Meeks's knowledge of this information. This information is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use.

77. BMO made reasonable efforts to keep the identities, contact and business information, and financial management terms for these customers secret by providing that information only to select individuals within BMO and requiring those employees – including Meeks – by agreement and by BMO policy to maintain the confidentiality of that information.

78. Meeks was aware of those policies and had a duty under his agreements with BMO to keep this information confidential and not disclose it to or use it for his new company.

79. However, Meeks used his knowledge of this information and disclosed it to Meeks Wealth Management in order to solicit BMO customers. He did so with full knowledge that he had a duty not to use or disclose the information.

80. As a direct and proximate result of Meeks's misappropriation and use, BMO has suffered damages in excess of $200,000.

81. Meeks's misappropriation of the trade secret information described herein was willful, malicious, and deliberate.

**WHEREFORE**, BMO asks that this Court enter a judgment in its favor and against Meeks:

(f) Awarding actual damages in an amount to be determined at trial;

(g) Entering an injunction enforcing the terms of the Separation Agreement, including the non-solicitation, confidentiality, and non-disparagement provisions;

(h) Awarding BMO punitive damages of two times any award hereunder and attorney's fees and costs incurred as a result of Meeks's intentional and willful conduct; and

(i) Granting BMO such other and further relief as the Court deems proper and just under the circumstances.

## JURY DEMAND

Plaintiff BMO Harris Bank, N.A. hereby demands trial of this action by jury.

Respectfully submitted,

BMO Harris Bank, N.A.

By: /s/ *Sarah R. Marmor*

    Sarah R. Marmor
    Suzanne Alexander
    SCHARF BANKS MARMOR LLC
    333 West Wacker Drive, Suite 450
    Chicago, Illinois 60606
    Telephone: (312) 726-6000
    Email: smarmor@scharfbanks.com
    Email: salexander@scharfbanks.com

    *Attorneys for BMO Harris Bank, N.A.*